IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| KAREN ZULKOWSKI,<br><br>Plaintiff,<br><br>vs.<br><br>GUILD MORTGAGE COMPANY,<br><br>Defendant. | CV 17-147-BLG-TJC<br><br>**ORDER** |

Plaintiff Karen Zulkowski brings this action against defendant Guild Mortgage Company ("Guild")[1], asserting various claims related to Guild's attempt to foreclose on a trust indenture. (*See generally* Doc. 10.) Before the Court is Guild's Motion for Summary Judgment (the "Motion"), brought pursuant to Fed. R. Civ. P. 56. (Doc. 4.) For the reasons set forth below, Guild's Motion is **GRANTED**.

I.  **Factual Background**

Zulkowski owns a residence at 31 Snowy Lane in Red Lodge, Montana (the "Property"). (Doc. 32 at ¶ 1.) On August 23, 2010, Zulkowski executed a promissory note (the "Note") in favor of Guild for the amount of $350,000.00 in order to purchase the Property. (Doc. 32 at ¶ 2.) Zulkowski also executed a Deed

---

[1] Zulkowski also alleged claims against First American Title Company of Montana, Inc., but that entity has been dismissed. (Doc. 26.)

1

of Trust (the "Deed") in favor of Guild encumbering the Property. (Doc. 32 at ¶ 3.) The Deed contains the following pertinent provisions:

> **15. Notices.** […] Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means….The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address.
>
> […]
>
> **22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument….The notice shall specify: (a) the default; (b) the action required to cure the default; (3) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.

(Doc. 6-1 at 10, 12) (emphasis removed).)

Zulkowski's monthly principal and interest payments under the Note were set at $1,721.79. (Doc. 32 at ¶ 5.) Throughout the life of the loan, Zulkowski has defaulted on her payment obligation multiple times. (Doc. 32 at ¶ 6.)

On December 16, 2013, an Assignment of Trust Indenture recorded in the records of the Clerk and Recorder of Carbon County as Document No. 356634, transferred beneficiary interest from MERS to Guild. (Doc. 21-3.)

Zulkowski continued to miss payments on the Note. (Doc. 32 at ¶ 7.) Therefore, Guild sent Zulkowski a Notice of Intention to Foreclose, dated

2

September 15, 2016 (the "9/16 Notice"). (Docs. 6-13, 21-2 at 2.) The 9/16 Notice lists Zulkowski's address as the Property address at 31 Snowy Lane in Red Lodge, Montana. It provides in pertinent part that Zulkowski's loan is in default; she may cure the default "by paying all monies owed within 30 days of the date of this letter"; and it explains the remedies available to Guild if the obligation remains unpaid, including acceleration and foreclosure. (Doc. 6-13.)

Zulkowski claims that she never received the 9/16 Notice. (Doc. 17-1 at 3.) She explains that she was residing primarily in Hawaii at times pertinent to this case, and therefore that "it did not make sense to have our mail delivered to our address at 31 Snowy Lane in Red Lodge." (Doc. 17-1 at ¶ 4.) She states that she and her husband, John, instructed the Red Lodge Post Office to forward their mail to Hawaii. (*Id*.) Nevertheless, Zulkowski does not contend that she informed Guild of the address change, or that she took any steps to designate an address other than the Property address where Guild should send any notices. Guild has also attached what it purports to be United States Postal Service tracking information that indicates the 9/16 Notice was forwarded to Hawaii. (Docs. 6-14, 21-2 at 2.)

Regardless of whether she received the 9/16 Notice, Zulkowski failed to cure the default within the time specified, and a Notice of Trustee's Sale was recorded on January 18, 2017, in the records of the Clerk and Recorder of Carbon

3

County as Document No. 368840.  (Docs. 32 at ¶ 7; 6-15.)  An Affidavit of Mailing was recorded on January 31, 2017, with the Carbon County Clerk as Document No. 368975.  (Docs. 32 at ¶ 10; 6-16.)  The Notice of Trustee's Sale is the first correspondence from Guild that Zulkowski acknowledges receiving.  Nevertheless, Zulkowski claims she had already found out about the foreclosure on February 26, 2017, when a friend sent her a message that she had seen the notice in the Carbon County News.  (Doc. 17-1 at ¶ 6.)

The Property was to be sold at a trustee's sale on May 31, 2017.  (Doc. 6-15.)  An Affidavit of Posting was recorded on February 15, 2017 in the records of the Clerk of Carbon County as Document No. 369076 (Docs. 32 at ¶ 11; 6-17), and an Affidavit and Certification of Publication was recorded on March 8, 2017, as Document No. 369241.  (Doc. 6-18.)

Zulkowski filed her initial Complaint on May 24, 2017 in the Montana Twenty-Second Judicial District Court, Carbon County.  (Docs. 32 at ¶ 12; 6-19.)  On May 25, 2017, the state court issued a temporary restraining order preventing Guild from proceeding with the May 31, 2017 trustee's sale.  (Docs. 32 at ¶ 12; 6-20.)  The Carbon County Clerk recorded a Cancellation of Notice of Trustee's Sale as Document No. 371119 on August 29, 2017.  (Docs. 32 at ¶ 14; 6-22.)

On September 3, 2017, Guild sent Zulkowski another Notice of Intention to Foreclose (the "9/17 Notice") (when referring to both the 9/16 Notice and 9/17

Notice, "Notices"), containing the same basic information as the 9/16 Notice with updated arrearage amounts. (Docs. 32 at ¶ 15; 6-23.) No trustee's sale has been scheduled to date. (Doc. 18 at 13.) Zulkowski makes no contention that she is not actually in default or that she has ever attempted to cure the default.

Zulkowski filed her Amended Complaint for Damages and Injunction ("Complaint") in state court on September 26, 2017 (Doc. 10), alleging that Guild breached the terms of the Deed in initiating foreclosure proceedings against Zulkowski (Count I); that it was negligent in doing so (Count II); that it violated the Montana Unfair Trade Practices Act and Consumer Protection Act (Count III); that it negligently misrepresented information to Zulkowski (Count IV); and that it should be enjoined from exercising the power of sale or otherwise foreclosing on Zulkowski (Count V).

Guild removed the case to this Court on November 1, 2017 (Doc. 1), and now moves for summary judgment on all Zulkowski's claims. (Doc. 4.)

## II. Parties' Arguments

Guild first argues that the Court lacks jurisdiction over this matter because no trustee's sale has occurred or is scheduled to occur, and therefore this matter is moot and lacks the requisite "case and controversy" to support jurisdiction. (Doc. 5 at 8-9.) Guild next argues that, assuming the Court has jurisdiction, Zulkowski's claims fail because the undisputed facts demonstrate that the factual bases of her

5

claims are false; and that, even if they were true, she has not demonstrated any damages. *Id*. at 10-13.

In response, Zulkowski argues first that her claims are not moot, because the mere cancellation of the trustee's sale does not immunize Guild from liability for any wrongful actions it took before or after the cancellation. (Doc. 17 at 6-11.) Next, Zulkowski argues that there is at least an issue of fact regarding the veracity of her claims sufficient to defeat summary judgment. *Id*. at 11-14. She argues that she has been damaged by being forced to retain counsel to protect her interests "and has spent an excessive amount of time and effort in addressing the problems caused by the defendant." *Id*. at 10. Finally, she argues that Guild failed entirely to address her claim of negligent misrepresentation, and that summary judgment should not issue at least with respect to that claim. *Id*. at 15.

The Court may address other arguments below as appropriate.

## III. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id*.

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the opposing party will have the burden of proof at trial, the moving party need only point to an absence of evidence to support the nonmoving party's case. *Id*.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The opposing party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 252).

Federal courts sitting in diversity jurisdiction "apply state substantive law and federal procedural law." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003). Since evidentiary rules are generally procedural in nature "the Federal Rules of Evidence 'ordinarily govern in diversity cases.' " *Id*. (quoting *Wray v. Gregory*, 61 F.3d 1414, 1417 (9th Cir. 1995)).

IV. **Discussion**

   A.   **Mootness**

Guild argues that Zulkowski's claims against it are moot because they all relate either to the now-cancelled trustee's sale or to a future trustee's sale that has not been scheduled. (Doc. 5 at 8-9.) Since Zulkowski remains in possession of the Property and there is no immediate plan to dispossess her, Guild argues that any judgment issued by the Court would be merely advisory. She cites *Raybould v. JP Morgan Chase Bank*, 2013 WL 4786492, *2 (D. Or. 2013) for the proposition that "the cancellation of a planned foreclosure sale moots claims related to that sale."

The Court declines to accept Guild's argument. Guild does not cite any controlling case law for the proposition that the cancellation of a foreclosure sale moots any claims related thereto. Zulkowski cites to the Montana Supreme Court case *Jacobsen v. Bayview Loan Servicing, LLC*, 371 P.3d 397, 407 (Mont. 2016), in which the Montana Supreme Court allowed claims related to a foreclosure to proceed even where the foreclosure had been cancelled. Though that case dealt

specifically with the Fair Debt Collection Practices Act, which is not implicated here, it is instructive as to how the Montana Supreme Court may treat this issue. *See Johnson v. American Honda Motor Company, Inc.*, 2012 WL 1282195, *1 n. 1 (D. Mont. Jan. 24, 2012) ("Federal courts sitting in diversity are bound by the pronouncements of the state's highest court on applicable state law. When an issue of state law arises and the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case. In accomplishing this task, the Court must look to existing state law without predicting potential changes in that law." (quotations and citations omitted)).

Additionally, though Guild cancelled the trustee's sale it initiated related to the 9/16 Notice, the 9/17 Notice remains outstanding, and Guild could initiate a trustee's sale based on that Notice at any time. Guild does not point to any Montana statute that would result in the automatic cancellation of foreclosure proceedings absent some action on Guild's part, akin to the Oregon law relied upon by the court in *Raybould*. *Raybould*, 2013 WL 4786492 at *2. Accordingly, since Zulkowski remains in the middle of a foreclosure proceeding that Guild could pursue at any time, the Court finds that her claims are not moot, and that it has subject matter jurisdiction.

/ / /

B.  **The Merits of Zulkowski's Claims**

As set forth above, Zulkowski brings five claims against Guild. Zulkowski states that the state district court enjoined the foreclosure sale of the property, and therefore her request for an injunction in Count V is moot. (Doc. 17 at 7.) As to Counts I through IV, Zulkowski's claims are all based on the same four allegations:

1. Zulkowski claims Guild did not send her the 9/16 Notice prior to filing the Notice of Trustee's Sale on January 18, 2017, as required by Section 22 of the Trust Indenture. (Doc. 10 ¶¶ 7, 8.)

2. Guild's 9/16 Notice and the 9/17 Notice both violate Section 22 of the Deed because they do not specify a date by which default must be cured. (Doc. 10 at ¶¶ 10, 14.)

3. Guild's 9/16 Notice violates the Deed because it demands payment to cure the default "within 30 days." (Doc. 10 at ¶ 12.)

4. Guild's 9/16 Notice and the 9/17 Notice both violate Section 22 of the Deed of Trust because the dates stated in the notice "do not comply with the timelines set forth for notices in Section 22 of the Deed of Trust." (Doc. 10 at ¶¶ 12, 15.)

/ / /

### 1. Whether Guild Sent the 9/16 Notice

Guild has submitted the declaration of James Madsen, which states that the 9/16 Notice was sent to Zulkowski at the Property address as required by the Deed of Trust. (Doc. 21-2 at ¶ 6). It has also sumitted the USPS tracking information that indicates the 9/16 notice was, in fact, forwarded to Zulkowski at Captain Cook, Hawaii. (Doc. 6-14.)

Zulkowski disputes this "to the extent that the affidavits of both John Zulkowski…and Karen Zulkowski…provide evidence that they never received any notice of intent to foreclose." (Doc. 32 at ¶ 7.) Fed. R. Civ. P. 56(c)(4). But the Deed does not require receipt of the notice. It provides that "[a]ny notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail . . . to Borrower's notice address." (Doc. 6-1 at 10.) It also provides that "[t]he notice address shall be the Property Address unless Borrower has designated a substituted notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address." *Id.* Zulkowski states in her declaration that she has resided in Hawaii since 2015, and was not residing at the Property during the period the 9/16 Notice would have been sent. She does not contend that she ever designated a substitute notice address, or notified Guild of the address change as required by the Deed.

Zulkowski also does not explain how she or her husband have personal knowledge as to whether Guild ever sent the required notice. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge…." Fed. R. Civ. P. 56(c)(4). "Statements based on improper legal conclusions or without personal knowledge are not facts and can only be considered as arguments, not as facts, on a motion for summary judgment." *Alvarez v. T-Mobile USA, Inc.*, 2011 WL 6702424, *3 (E.D. Cal. Dec. 21, 2011). At best, Zulkowski has personal knowledge that she never received the 9/16 Notice. But that allegation, even if true, is insufficient to constitute a violation of the terms of the Deed. The Deed does not require Guild to ensure that Zulkowski received notice of intent to foreclose, only that it give her notice according to the terms of the Deed.

The Court therefore finds that Zulkowski has not established a genuine issue of material fact as to whether Guild sent the 9/16 Notice to Zulkowski as required by Section 22 of the Deed.

### 2. The Date Specified on the 9/16 and 9/17 Notices

Zulkowski next alleges that the Notices "do[] not specify a date by which default must be cured" as required by Section 22 of the Deed. (Doc. 9 at 2-3.) Instead, argues Zulkowski, the Notices merely exhort her to cure her default "within 30 days," which is not the same as the requirement that Guild "specify…a

date, not less than 30 days from the date the notice is given to Borrower, by which default must be cured." (Doc. 17 at 12.)

The 9/16 Notice is dated September 15, 2016. (Doc. 6-13.) It states that Zulkowski can "cure default by paying all monies owed within 30 days of the date of this letter." *Id*. The 9/17 Notice is dated September 3, 2017. (Doc. 6-23.) It also states that Zulkowski can "cure default by paying all monies owed within 30 days of the date of this letter." *Id*. Zulkowski insists that this language is insufficient, essentially arguing that Guild violated the Deed by requiring her to calculate 30 days from the date of each Notice. This argument is devoid of merit. The Notices plainly "specified a date" by which Zulkowski must cure her default: September 15, 2016, plus 30 days, and September 3, 2017, plus 30 days, respectively. There is no ambiguity in those calculations; they are, in a word, specific.

### 3. Demand for Payment Within 30 Days

Zulkowski asserts a related argument that the phrase "within 30 days" in the Notices contravenes the Deed's requirement for a cure-period "not less than 30 days." This argument is equally unpersuasive.

The U.S. District Court for the District of Minnesota addressed a similar argument in *Schroeder v. First Nat. Collection Bureau, Inc.*, 2011 WL 2960259 (D. Minn. July 21, 2011). In that case, the plaintiff argued that language used to

communicate a payment due date "within 30 days," contradicted language that a payment was due "30 days after." *Id.* at *2. The Court disagreed, stating:

> The Court cannot agree with Schroeder's creative interpretation. It is standard practice to count a given number of days beginning with the day after the initial day. For example, if the second payment were due "within one day of the first payment," it would be due the day following the first payment, not the same day as the first payment. A common-sense reading of "due within 30 days" yields a due date 30 days in the future.

The Minnesota Court explained further that "the phrase 'within 30 days' is not susceptible to two *plausible* interpretations. Interpreting 'within 30 days' to contradict the due date '30 days after' is not plausible; it is a 'bizarre or idiosyncratic interpretation.'" *Id.* at *2 n. 3 (emphasis in original) (citations omitted). The Court agrees, and therefore rejects Zulkowski's argument that the phrase "within 30 days" could be taken to mean payment was required in "less than 30 days."

For the foregoing reasons, Zulkowski has failed to raise a genuine issue of material fact regarding whether Guild violated the Deed of Trust with respect to the date to cure her default presented in the Notices.

### 4. The Other Dates Listed on the Notices

Finally, Zulkowski argues that other dates listed on the Notices "are confusing and misleading" "at the very least," and therefore contravene Section 22 of the Deed. (*See* Doc. 17 at 13.) Specifically, Zulkowski takes issue with the

14

inclusion of additional dates in the Notices, and the amount which would be due on those dates to cure Zulkowski's total delinquency. For example, the 9/16 Notice provides that the total delinquency, including late charges and fees, would be $4,529.04 on 9/16/16, and $6,821.12 on 10/01/16. (Doc. 6-13.) The 9/17 Notice similarly provides that the total delinquency as of 9/16/17 would be $32,393.20 on 9/16/17, and $34,647.28 on 10/1/17. (Doc. 6-23.)

Again, the Court finds this argument meritless. These dates and amounts simply explain to Zulkowski the ever-mounting debt she is accruing to Guild, and display to her the amount she must pay in order to cure her default at regular future intervals, as dictated by the interest rate specified in the Note and any other applicable charges and penalties. It is a very basic aspect of Zulkowski's agreement with Guild that the total amount to cure her default, absent any payment, will be greater on September 16, 2017, than it was on September 3, 2017, and will be greater again on October 1, 2017, than it was on September 16, 2017. It is not credible for her to suggest that she is confused or misled by these figures. Moreover, at no point does Zulkowski argue that Guild's calculations are incorrect, or that she does not owe the amount Guild suggests she owes. Accordingly, even if Zulkowski were correct that the dates are misleading, the Court still finds that she has not been damaged by the appearance of these dates on the Notices.

Zulkowski does not raise a genuine issue of material fact as to whether the written notices violated the Deed by the including additional dates and delinquency amounts. The ostensibly offending dates are clearly expressing to Zulkowski other important information about her loan agreement. The Court finds that even if the dates were misleading, Zulkowski has not presented any evidence to demonstrate how that misleading information could have caused her any harm. Accordingly, the Court finds there is no dispute of material fact with respect to the other dates listed on the Notices.

### 5. Count IV: Negligent Misrepresentation

In her response brief, Zulkowski makes an additional argument with respect to her claim of negligent misrepresentation in Count IV of the Complaint. She argues that Guild committed the tort of negligent misrepresentation because the 9/17 Notice identified Guild as the beneficiary of the Note. (Doc. 17 at 14-15.) She alleges MERS is the beneficiary, not Guild. Again, this argument is meritless.

First, Guild has been the beneficiary of the Note since 2013, pursuant to the Assignment of Trust Indenture that assigned MERS' interest to Guild. (Doc. 21-3.) Therefore, Guild's representation to that effect was accurate. That alone is sufficient to defeat Zulkowski's claim.

But in addition, Zulkowski fails to plead a proper claim for negligent misrepresentation, which requires presentation of the following elements: (a) the

defendant made a representation as to a past or existing material fact; (b) the representation must have been untrue; (c) regardless of its actual belief, the defendant must have made the representation without any reasonable ground for believing it to be true; (d) the representation must have been made with the intent to induce the plaintiff to rely on it; (e) the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation and it must have been justified in relying upon the representation; (f) the plaintiff, as a result of its reliance, must sustain damage. *Harpole v. Powell County Title Co.*, 309 P.3d 34, 38 (Mont. 2013.) Zulkowski does not plead any facts to support these elements, and her claim would be subject to dismissal for that reason alone under Fed. R. Civ. P. 12(b)(6).

Even if she had stated a proper claim for negligent misrepresentation, the undisputed facts demonstrate that she did nothing to rely on Guild's alleged misrepresentation that it, and not MERS, held beneficial interest. It is not as if Zulkowski attempted to satisfy her debt with Guild when she should have attempted to settle with MERS. On the contrary, Zulkowski does not appear to have taken any action at all with respect to her debt.

In short, Guild did not misrepresent anything to Zulkowski. Zulkowski did not rely on any perceived misrepresentation. And she has not been damaged by any reliance on any misrepresentation. The Court finds there is no issue of

17

material fact regarding Count IV of Zulkowski's Complaint, and summary judgment is also proper with respect to that claim.

## IV. Conclusion

Zulkowski would have the burden of proof at trial to establish the essential elements of her claims in Counts I through V of the Complaint. However, she has failed to establish a genuine issue of material fact with respect to any of her claims, and Guild is entitled to judgment as a matter of law.

Accordingly, the Court **ORDERS** that Guild's Motion for Summary Judgment (Doc. 4) is **GRANTED**.

**JUDGMENT SHALL BE ENTERED ACCORDINGLY.**

DATED this 18th day of September, 2018.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge